IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
NICK MELVIN,                   )
                               )
        Plaintiff,             )
                               )     CIVIL ACTION NO.
        v.                     )       2:21cv475-MHT
                               )          (WO)
TROY UNIVERSITY, et al.,       )
                               )
        Defendants.            )
```

## OPINION

Plaintiff Nick Melvin brought this lawsuit against defendants Troy University and three of its current or former employees--Luke Ritter, Scout Blum, and Jack Hawkins, Jr.--in their individual capacities,[1] asserting the federal claims that they deprived him of the rights

---

1. Melvin's complaint does not specify whether he intends to sue the employee defendants in their individual or official capacities. However, in his response to the motion to dismiss, he clarifies that "[e]ach of the [employee] defendants is sued in his/her individual capacity[.]" Plaintiff's Response to Motion to Dismiss (Doc. 17) at 9. Because Melvin in no way indicates that he intends to sue the employee defendants in their official capacities, so as to put the defendants and the court on notice of such an important matter, the court accepts that he intends to sue the employee defendants in their individual capacities only.

of due process, equal protection, and free speech in violation of the First and Fourteenth Amendments, as enforced through 42 U.S.C. § 1983; and conspired to deprive him of the same rights due to his political and religious views in violation of 42 U.S.C. § 1985(3). Melvin also asserts state claims for breach of contract, unjust enrichment, promissory fraud, and fraudulent misrepresentation.[2]

This cause is now before the court on the defendants' motion to dismiss. For the reasons that follow, the motion will be granted.

## I. Standard on Motion to Dismiss

The defendants move to dismiss Melvin's complaint under Federal Rule of Civil Procedure 12(b)(6) for

---

2. Melvin's complaint lists seven counts: one count asserting violations of the First and Fourteenth Amendment under § 1983; one count asserting a violation of § 1985; four counts asserting violations of state law; and one count asserting "First Amendment Retaliation," Complaint (Doc. 1) at ¶¶ 89-92. The court construes this last count as brought under § 1983.

failure to state a claim.  To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "[T]he court need not accept a plaintiff's conclusory allegations or 'formulaic recitation[s] of the elements of a cause of action.'" *Hammonds v. Montgomery Children's Specialty Ctr., LLC*, No. 2:21CV448-MHT, 2022 WL 949830, at *1 (M.D. Ala. Mar. 29, 2022) (Thompson, J.) (quoting *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)).

The defendants also move to dismiss Melvin's claims against Troy University as barred by sovereign immunity, in what is equivalent to a facial attack on the court's

3

subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996) (noting that a dismissal on a sovereign-immunity ground should be under Rule 12(b)(1) because no subject-matter jurisdiction exists). "A facial attack [under Rule 12(b)(1)] questions the sufficiency of the pleading and the plaintiff enjoys similar safeguards to those provided when opposing a motion to dismiss under ... Rule ... 12(b)(6)." *Whitson v. Staff Acquisition, Inc.*, 41 F. Supp. 2d 1294, 1296 (M.D. Ala. 1999) (Thompson, J.).

When deciding either type of motion, "[t]he court accepts the plaintiff's allegations as true, construes them most favorably to the plaintiff, and will not look beyond the face of the complaint." *Id.* (citations omitted); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

**4**

## II. Factual Background

In 2015, Melvin enrolled in a master's program at Troy University.  As part of his required coursework, he took a history class taught by defendant Ritter.  After Melvin submitted work for the class evincing a Christian and politically conservative viewpoint, and requested to write his final paper on a book written by a conservative Christian, Ritter accused him of plagiarism.  Ritter contacted defendant Blum, who also worked at Troy University, although in what capacity it is unclear, and together they investigated Melvin's work for plagiarism.

The university proceeded to hold a hearing on the matter at which Melvin was not allowed to be present. He was also not allowed to appeal its findings.  Melvin does not allege what the outcome of the hearing was, except to say that he went on to complete his remaining coursework as a "transient student" at the University of North Alabama.  Complaint (Doc. 1) at ¶ 31.

After completing his coursework at the University of North Alabama, Melvin needed to pass a "Comprehensive Exam" in order to receive his degree from Troy University. *Id.* at ¶ 33. According to university policy, the exam was to be graded independently by multiple graders, and was not to bear the examinee's name, so as to allow for anonymous grading.

Melvin took the exam in March 2018, under the supervision of a proctor, and was notified later that month that he had failed. He then requested a copy of his exam. The copy that he received bore his name. Melvin took the exam again in July 2018, under the supervision of a proctor, and was notified later that month that he had failed a second time. Again, he requested a copy of his exam, and again, when he received it, the exam bore his name. Whoever graded Melvin's exams had accused him of cheating, noted his "unsupported belief in God," *id.* at ¶ 47, and criticized his skill as a writer.

6

Melvin later commissioned a forensic test that revealed that his exams had both been graded by Blum and Blum alone.

Melvin filed the instant complaint in July 2021.

## III. Discussion

### A. Claims Against Defendant Hawkins

Melvin appears to bring all of his claims against each of the defendants, including defendant Hawkins.[3] The court has jurisdiction over Melvin's claims against Hawkins pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

However, Melvin has alleged no facts to support his claims against Hawkins.  Indeed, the complaint contains

---

3. In the section of his complaint setting forth his causes of action, Melvin once, in Count 1, states the names of all the defendants, and then simply uses the term "Defendants" throughout the remainder of the complaint.  See Complaint (Doc. 1) at 10-19.

7

no factual allegations about Hawkins, except that he resides in the Middle District of Alabama. *See* Complaint (Doc. 1) at ¶ 9. In setting forth his causes of action, Melvin states that Hawkins, along with the rest of the defendants, "deprived Plaintiff of his constitutional right to due process and equal protection under the color of law." *Id.* at ¶ 54. This assertion is a conclusory allegation, and as such, it cannot protect Melvin's claims from dismissal. *See Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1262-63 (11th Cir. 2004). Melvin goes on to make additional conclusory allegations about "Defendants"--which the court assumes include Hawkins--throughout the remainder of the complaint, but nowhere does the complaint set forth any specific actions taken by Hawkins. Accordingly, all claims against Hawkins are due to be dismissed for failure to state a claim, albeit with leave to amend.

**B. Claims Against Defendant Troy University**

As with Hawkins, Melvin names Troy University as a defendant as to all of his federal and state claims. Troy University argues, and the court agrees, that the Eleventh Amendment to the United States Constitution deprives the court of subject-matter jurisdiction over Melvin's claims against it.[4]

---

4.    In their consolidated motion to dismiss, the defendants do not invoke the Eleventh Amendment to the United States Constitution, but instead assert that Troy University is protected from all of Melvin's claims by "the Alabama state law doctrine of sovereign immunity as set forth in the 11th Amendment to the Alabama State Constitution."  Motion to Dismiss (Doc. 12) at 1.  The court assumes that this was error; the case law that the defendants cite in their brief in support of the motion to dismiss makes clear that they intend to invoke the protection of the Eleventh Amendment to the United States Constitution, rather than the guarantee of sovereign immunity provided by the Alabama Constitution, which appears not in the state constitution's eleventh amendment, but in Article I, Section 14.  *See* Brief in Support of Motion to Dismiss (Doc. 14) at 9-10 (citing *Harden v. Adams*, 760 F.2d 1158 (11th Cir. 1985)).  In any case, the court may raise on its own whether the Eleventh Amendment to the United States Constitution bars Melvin's claims against Troy University.  *See McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1259 (11th Cir. 2001); *McWilliams v. Escambia Charter Sch.*, 144 Fed. Appx. 840, 842-43 (11th Cir. 2005).

"The Eleventh Amendment ... bars suits against states in federal court unless a state has waived its sovereign immunity or Congress has abrogated it." *Cassady v. Hall*, 892 F.3d 1150, 1152 (11th Cir. 2018). This bar applies to suits against "state agencies and other arms of the state." *Id.* at 1153. Troy University is an arm of the State of Alabama and therefore enjoys Eleventh Amendment protection. *See Harden v. Adams*, 760 F.2d 1158, 1163-64 (11th Cir. 1985) (finding that Troy University has sovereign immunity under the Eleventh Amendment). Moreover, Alabama has not consented to suit in federal court,[5] nor has Congress abrogated Eleventh Amendment

---

5. Melvin argues that, because Alabama has waived sovereign immunity to actions brought in its own courts to compel state officials to perform their legal duties, *see Ex parte Carter*, 395 So.2d 65, 68 (Ala. 1981), his claims are not barred by the Eleventh Amendment. It is well established, however, that "a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.9 (1984); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) ("[A] state does not ... consent to suit in federal court merely by stating its intention to 'sue and be sued,' or

immunity for Melvin's claims. *See Edelman v. Jordan*, 415 U.S. 651, 674-77 (1974) (holding that § 1983 does not abrogate Eleventh Amendment immunity); *Fincher v. State of Fla. Dept. of Labor*, 798 F.2d 1371, 1372 (11th Cir. 1986) (holding that § 1985 does not abrogate Eleventh Amendment immunity); *see also Flood v. State of Ala. Dept. of Indus. Relations*, 948 F. Supp. 1535, 1542 (M.D. Ala. 1996) (Thompson, J.) (noting that Eleventh Amendment immunity applies "regardless of whether the claim is based on state law or federal law"). Accordingly, the court will dismiss all of Melvin's claims against Troy University, albeit with leave to reassert them in state court.

---

even by authorizing suits against it 'in any court of competent jurisdiction.'") (internal citations omitted).

### C. Claims Against Defendants Ritter and Blum

### i. Claims Under §§ 1983 and 1985

Melvin brings claims against defendants Ritter and Blum pursuant to 42 U.S.C. § 1983 for violation of his rights to equal protection, due process, and free speech, and for retaliation against him for his speech; and pursuant to 42 U.S.C. § 1985 for conspiracy to violate the above-mentioned constitutional rights. The court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights).

Ritter and Blum argue, and the court agrees, that Melvin's §§ 1983 and 1985 claims against them are due to be dismissed for failure to state a claim because they are barred by the statute of limitations.[6] "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is 'apparent from the face of the

---

6. Ritter and Blum also argue that they enjoy qualified immunity against Melvin's §§ 1983 and 1985 claims. The court need not address this argument because it finds that these claims are barred by the statute of limitations.

complaint' that the claim is time-barred." *La Grasta v. First Union Securities, Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003)). "[C]laims brought under 42 U.S.C. §§ 1983 and 1985 ... are measured by the personal injury limitations period of the state," *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996), which, in Alabama, is two years, *see Jones v. Allen*, 483 F. Supp. 2d 1142, 1146 (M.D. Ala. 2007) (Thompson, J.); *Trawinski v. United Technologies*, 313 F.3d 1295, 1298 (11th Cir. 2002). Melvin was therefore required to have brought his §§ 1983 and 1985 claims within two years of the events giving rise to those claims. From the face of his complaint, it appears that he did not; all of the events giving rise to those claims took place in 2018 at the latest, and he filed this lawsuit in 2021.

In his response to the motion to dismiss, Melvin contends that he was unaware of the factual basis for his §§ 1983 and 1985 claims until 2020, when forensic testing

13

revealed that Blum was the sole grader of his exams, and that therefore his claims are timely under § 6-2-3 of the Code of Alabama, which provides: "In actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action."  Ala. Code 1975 § 6-2-3.[7]

Melvin errs by looking to state law, as opposed to federal law, to determine when his claims accrued.  *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."); *Newberger v. U.S. Marshals Service*, 751 F.2d 1162, 1165 (11th Cir. 1985) ("[T]he determination of the time at

---

7. The Alabama Supreme Court has extended § 6-2-3's reach to apply "not only to the tort of fraud, but also to torts where the existence of the cause of action has been fraudulently concealed."  *Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013).

which a cause of action [under § 1985] accrues is a federal question.").

However, like Alabama law, federal law provides that claims under §§ 1983 and 1985 do not accrue "until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Rozar*, 85 F.3d at 561-62 (quoting *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987)). The "[p]laintiffs must know or have reason to know that they were injured, and must be aware or should be aware of who inflicted the injury." *Id*. at 562 (citing *Mullinax*, 817 F.2d at 716). At the same time, a plaintiff need not "know or suffer the full extent of his injury before his cause of action accrues and the statute of limitations begins to run. Rather, a plaintiff must know or have reason to know that he was injured to some extent." *Karantsalis v. City of Miami Springs, Fla.*, 17 F.4th 1316, 1323 (11th Cir. 2021) (citing *Rozar*, 85 F.3d at 562).

While this federal accrual rule protects plaintiffs
who are unaware of their injuries, it does not excuse
them from exercising "the proper diligence ... which ...
statutes of limitations were intended to ensure,"
*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). *See
Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 646 (2010)
("[T]reatise writers now describe 'the discovery rule'
as allowing a claim 'to accrue when the litigant first
knows *or with due diligence should know* facts that will
form the basis for an action.'") (quoting 2 C. Corman,
Limitation of Actions § 11.1.1, 134 (1991)).

Based on the language setting forth his causes of
action, Melvin's federal claims seem to be largely--if
not entirely--premised on Ritter's accusing him of
plagiarism during a 2017 course, allegedly in retaliation
for his expression of conservative Christian beliefs, and
the handling of the subsequent plagiarism hearing, at
which Melvin was not allowed to be present and from which
he was not allowed to appeal. *See* Complaint (Doc. 1) at

16

¶ 54.   ("Defendants Hawkins, Ritter, Blum and Troy University along with their agents deprived Plaintiff of his constitutional right to due process ... when Plaintiff was falsely accused of plagiarism, denied an opportunity to confront and cross examine his accusers, denied a fair and open hearing, denied the opportunity to present evidence and testimony in [*sic.*] his behalf, and denied access to appellate review."); *id.* at ¶ 84 ("Defendants conspired and in fact did, deprive Plaintiff of his constitutional rights to free speech and due process of law, under the color of law when Defendants knowingly made false allegations of plagiarism against Plaintiff and worked together to deny him any due process as discussed herein.  Defendants also worked together to punish and attack Plaintiff for his christian [*sic.*] beliefs and statements as well as his political beliefs and opinions.").  According to the allegations in the complaint, Melvin was fully aware of these facts in 2017 and 2018.  The identity of the person who graded his

17

comprehensive exams is irrelevant to whether these actions violated his constitutional rights. Therefore, to the extent his claims are based on the accusation of plagiarism and what happened at the plagiarism hearing, the statute of limitations clearly has run.

To the extent that Melvin's §§ 1983 and 1985 claims are premised on the theory that Ritter and Blum deprived him of his First Amendment, equal protection, or substantive due process rights by failing him (or, in Ritter's case, conspiring with Blum to fail him) on his comprehensive exams because he expressed conservative Christian beliefs--in which case the fact that Blum was the sole grader of his exams could be of relevance to those claims--the court still finds the claims to have accrued in 2018. In his response to the motion to dismiss, Melvin contends that he did not discover the identity of his grader until "some time after May 8, 2020." Response (Doc. 17) at 2. Yet he also admits that he did not ask the university who graded his exams until

that date, *see id*. at 2-3, despite the fact that he knew in 2018 that he had failed his exams and that the grader of his exams had criticized his "unsupported belief in God," Complaint (Doc. 1) at ¶ 47.  This is tantamount to an admission that he did not exercise reasonable diligence in ascertaining the facts necessary to bring a §§ 1983 or 1985 claim on the theory that the grader of his exams failed him because of an improper motive.[8]

---

8.  Melvin argues in his response that he pursued his claims with reasonable diligence by sending a letter to Troy University on May 8, 2020, notifying it of his suspicion that Blum was the sole grader of his exams.  He attaches to the response the letter, along with an affidavit. The court cannot consider the letter, which is not referenced in the complaint, or the affidavit, without converting the motion to dismiss into a motion for summary judgment.  *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002).  In any case, the letter and affidavit are not helpful to Melvin, as they do not explain his delay investigating who graded his exams.  Indeed, the letter states that he has evidence (emails from the remediation period before his second exam) showing that Blum was the grader.  *See* Letter (Doc. 17-1) at 10 (top of last page).  The court is left to conclude that the facts that roused Melvin's suspicion in May 2020 were apparent to him, or should have been apparent to him, around July 2018, when he failed his exam for the second time and obtained a copy of the exam.

Finally, if Melvin's §§ 1983 and 1985 claims are premised on the theory that Ritter and Blum deprived him, or conspired to deprive him, of procedural due process by failing to ensure that his exams were graded by

---

Also, because Melvin admits that he only began trying to identify the grader of his exams in May 2020, the court rejects his argument that his claims under §§ 1983 and 1985 should be equitably tolled.  State law governs the tolling of claims under §§ 1983 and 1985. *See Wallace v. Kato*, 549 U.S. 384, 394-395 (2007).  Under Alabama law, "[a] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way as to the filing of his action." *LEAD Educ. Found. v. Ala. Educ. Ass'n*, 290 So. 3d 778, 786 (Ala. 2019) (quoting *Weaver v. Firestone*, 155 So. 3d 952, 957-58 (Ala. 2013)). Melvin's admission that he waited almost two years after his second exam to begin trying to identify the grader of his exams prevents him from establishing the first of these elements.

Melvin's argument that he is entitled to equitable tolling because Ritter and Blum have not shown that they have been harmed by his delay in bringing his claims also fails.  It is not Ritter and Blum's burden to show that equitable tolling should not apply.  Rather, "[t]he plaintiff 'bears the burden of demonstrating that there are extraordinary circumstances justifying the application of the doctrine of equitable tolling.'" *Id.* (quoting *Ex parte Ward*, 46 So. 3d 888, 897 (Ala. 2007)).

multiple graders, they are due to be dismissed for failure to state a claim regardless of whether the statute of limitations has expired.  The Constitution's guarantee of procedural due process does not demand that exams be graded by multiple graders.  All it requires, in the context of the decision to deny a student his degree for poor academic standing, is, *at most*, that the student be informed of his dissatisfactory performance and the danger it might pose to his graduation, and that the ultimate decision to fail the student be careful and deliberate.  *See Bd. of Curators of Univ. of Miss. v. Horowitz*, 435 U.S. 78, 85 (1978); *see also id.* at 85-86 (noting that due process does *not* require that a student receive an informal hearing before being denied her degree for poor academic standing).  Additionally, "the Supreme Court has rejected the contention that, in an academic-dismissal case, a school's failure to follow its own procedures in and of itself amounts to a due process

violation." *Page v. Hicks*, 773 Fed. Appx. 514, 519 (11th

Cir. 2019) (citing *Horowitz*, 435 U.S. at 92 n.8).

Moreover, even when an unfair process has been used

to deny a student his degree for academic reasons, he

will not have suffered a deprivation of his federal

procedural due process rights so long as state law

provides an adequate means to remedy the procedural

deprivation, regardless of whether he avails himself of

that remedy. *See Lambert v. Bd. of Trustees*, 793 Fed.

Appx. 938, 943 (2019) (affirming dismissal of procedural

due process claim by student challenging denial of degree

for academic reasons where it was undisputed that Alabama

law provided adequate post-deprivation remedy); *see also*

*Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir.

2000) ("[O]nly when the state refuses to provide a

process sufficient to remedy the procedural deprivation

does a constitutional violation actionable under section

1983 arise.") (quoting *McKinney v. Pate*, 20 F.3d 1550,

1557 (11th Cir. 1994) (en banc)). Here, "[i]n Alabama,

a party may seek relief from the state courts, which hear lawsuits involving claims by public university students relating to arbitrary, capricious, or bad-faith grading," *Lambert*, 793 Fed. Appx. at 943 (citing *Burch v. Moulton*, 980 So. 2d 392, 398-99 (Ala. 2007)), and Melvin has not alleged that this post-deprivation remedy is insufficient. Accordingly, the court will dismiss Melvin's claims under §§ 1983 and 1985 against defendants Ritter and Blum, albeit with leave to amend.

### ii. State Claims

Melvin appears to bring the following state claims against Ritter and Blum: breach of contract, unjust enrichment, promissory fraud, and fraud by misrepresentation. The court has jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction" over

23

pendant state claims if "the district court has dismissed all claims over which it has original jurisdiction." The Eleventh Circuit has encouraged district courts to exercise that power. *See Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999). Heeding the Eleventh Circuit's advice, this court will dismiss without prejudice Melvin's state claims against Ritter and Blum.

Admittedly, there is an exception to the rule that a district court should generally dismiss any remaining state claims where it has dismissed all federal claims: where the statute of limitations has run on a plaintiff's state claim while the action in federal court was pending, the district court should generally retain jurisdiction over the state claim. *See L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984).

Here, the court finds that this exception does not apply, because the statutes of limitations on Melvin's state claims were tolled under 28 U.S.C. § 1367(d), which

**24**

provides that a dismissal of a claim brought under § 1367(a) automatically tolls the statute of limitations on the dismissed claim until 30 days after the claim has been dismissed. *See Beck v. Prupis*, 162 F.3d 1090, 1099-1100 (11th Cir. 1998).

While the Supreme Court has not expressly held that § 1367(d) applies to state claims against state officials sued in their individual capacities, the Court's precedents suggest that it does. In *Raygor v. Regents of University of Minnesota*, the Court held that § 1367(d) does not toll the period of limitations for state claims asserted against a nonconsenting State that are dismissed on Eleventh Amendment grounds. 534 U.S. 533, 548 (2002). To read § 1367(d) to apply to claims against a nonconsenting State, the Court reasoned, would extend against the State's will the period during which it could be sued in its own courts, thereby posing a risk of abrogating its sovereign immunity in violation of the Eleventh Amendment. *See id.* at 1006. In light of that

25

risk, the Court declined to adopt such a reading absent a clear statement from Congress that it intended § 1367(d) to apply to state claims against nonconsenting States. *See id.* at 1006-1008.

In *Jinks v. Richland County, S.C.*, the Court declined to extend *Raygor*'s limitation on § 1367(d) to state claims against political subdivisions of States. *See* 538 U.S. 456, 466 (2003). To read § 1367(d) to apply to such claims, it reasoned, would *not* pose a risk of violating the Eleventh Amendment, because political subdivisions of States generally do not enjoy Eleventh Amendment protection in the first place. *See id.* at 466-67.

Thus, under *Raygor* and *Jinks*, the question whether § 1367(d) applies to a given state claim would seem to depend on whether the defendant against whom the claim is asserted enjoys Eleventh Amendment immunity against the claim--if the defendant enjoys Eleventh Amendment immunity, § 1367(d) does not toll the statute of limitations; if he does not enjoy Eleventh Amendment

26

immunity, § 1367(d) does toll the statute of limitations. State officials sued in their individual capacities do not enjoy Eleventh Amendment immunity. *See Jackson v. Georgia Dept. of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *see also Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 530-32 (1st Cir. 2009); *Williams v. Com. Of Ky.*, 24 F.3d 1526, 1543 (6th Cir. 1994); *Wilson v. UT Health Center*, 973 F.2d 1263, 1271 (5th Cir. 1992); *Pena v. Gardner*, 976 F.2d 469, 473-74 (9th Cir. 1992). Accordingly, following the Court's reasoning in *Jinks*, this court finds that § 1367(d) applies to state claims against state officials sued in their individual capacities. Therefore, as indicated above, the court will dismiss Melvin's state claims against Ritter and Blum with leave to refile in state court.

***

An appropriate judgment will be entered.

DONE, this the 29th day of June, 2022.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE